UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 1201 WEST GIRARD AVENUE, LLC ) | |
| ) | |
| and ) | |
| ) | |
| ORI FEIBUSH ) | |
| ) | Case No. 23-CV-3488 |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| DARRELL L. CLARKE ) | |
| ) | |
| Defendant. ) | |

**FIRST AMENDED COMPLAINT**

**AND NOW** comes Plaintiffs 1201 West Girard Avenue, LLC and Ori Feibush ("Plaintiffs"), by and through undersigned counsel, Bochetto & Lentz, P.C., and hereby aver as follows in support of their First Amended Complaint against Defendant Darrell L. Clarke ("Clarke" or "Defendant"):

**NATURE OF ACTION**

1.    President of the Philadelphia City Council Darrell L. Clarke abused his power to intentionally interfere with Plaintiffs' as-of-right permit and thereby inflicted financial harm on Plaintiffs and impeded their ability to develop a property. Council President Clarke's willful misconduct has caused Plaintiffs to incur millions of dollars in damages.

2.    This lawsuit arises out of Council President Clarke's willful and malicious interference with Plaintiff's **as-of-right** permit, issued Zoning/Use permit No. ZP-2020-002668 (the "January 14 Zoning Permit"), in an effort to frustrate Plaintiffs' development of the property located at 1201 West Girard Avenue, Philadelphia, Pennsylvania 19123 (the "Property") and to pervert the legal process to accomplish a purpose for which the process was not designed.

1

3.      Council President Clarke abused his power by directly and indirectly threatening the Philadelphia Zoning Board of Adjustment ("ZBA") members to coerce them to rule in favor of his frivolous legal challenge to Plaintiffs' as-of-right permit.

4.      At the ZBA hearing, counsel for the ZBA and the City of Philadelphia each declared Council President Clarke's interference with Plaintiffs' as-of-right permit to be completely meritless.

5.      Specifically, Leonard F. Reuter, Senior Attorney for the City of Philadelphia, argued against Council President Clarke at the Zoning Board Appeal hearing as follows:

> [W]e have full respect for Council President Clarke's position and his interest in his constituents, and we have full respect for the people that live in the neighborhood. Nevertheless, this is an RM1 property and the Code allows this, and the belief that maybe that provision shouldn't apply to this property or this should have been re-mapped so that this wouldn't have been allowed, that's not an argument that could possibly be successful in order to invalidate the permit. . . . the fact is that there's no legal argument here that I've been able to discern, at least not in the notice of appeal, as to what was actually wrong with the issuance of this permit.

(*See* ZBA Tr. at 16:1-17:18.)

6.      The City of Philadelphia's counsel, Mr. Leonard F. Reuter continued: "It's the City's position that there is no case that has been made here as to why the permit should not have been issued by right." (ZBA Tr. at 32:22-32:24.)

7.      Despite Council President Clarke's legal challenge being totally frivolous, he was able to gain traction for his appeal by abusing his power to level threats against key individuals and thereby illicitly manipulate the legal process in his favor.

8.      By way of limited example, Council President Clarke called then-ZBA Chairman – *off the record* – to unlawfully influence the ZBA to vote in his favor of his frivolous legal challenge and to intentionally interfere with Plaintiff 1201 West Girard's property interest.

9.      After Plaintiffs filed the initial complaint against the Defendant, former ZBA-Chairman conducted an interview with The Philadelphia Inquirer about this matter and "confirmed to The Inquirer that it was a call from Clarke" and "he agrees . . . that the zoning board's vote for Clarke's appeal was wrong because the permits were legal under the existing zoning." Blumgart, Jake, *Council President Darrell Clarke sued by developer Ori Feibush over N. Philly apartment building*, Philadelphia Inquirer (August 21, 2023).

10.      Therefore, even though the ZBA knew Council President Clarke's challenge to the Plaintiffs' permit was meritless, and communicated this fact to Plaintiffs, it initially succumbed to Council President Clarke's threats and the custom deference to councilmembers by approving Clarke's legal challenge.  However, upon reconsideration, the ZBA rejected Council President Clarke's challenge.

11.      Council President Clarke frivolously appealed the ZBA's denial of his legal challenge to the Philadelphia Court of Common Pleas.

12.      On October 24, 2022, the Philadelphia Court of Common Pleas affirmed the ZBA's rejection of Clarke's legal challenge and highlighted the clear willful misconduct, abuse of process, wrongful interference, and logical fallacy pursued by Council President Clarke.

13.      As a direct and proximate result of Council President Clarke's intentional interference with and frivolous legal challenge to Plaintiffs' as-of-right permit, Plaintiffs have sustained immense financial harm, well in excess of Two Million Dollars ($2,000,000.00).

14.      Council President Clarke desired to bring about financial harm to Plaintiffs and/or impede the development project or, at the very least, Council President Clarke was aware that financial harm to Plaintiffs and/or impeding of the development project was substantially certain to ensue from his abuse of power and willful misconduct.

15.    Plaintiffs institute this action against Council President Darrell L. Clarke to recoup the financial losses – among other damages – caused by his abuse of power and willful misconduct.

## JURISDICTION AND VENUE

16.    This Court has original jurisdiction because several causes of action set forth herein arise under federal law. 28 U.S.C. § 1331.

17.    Venue is proper in the Eastern District of Pennsylvania because it is a district in which Defendant Clarke resides, in which a substantial part of the events of omissions giving rise to the claims occurred and a substantial part of the property that is the subject of the action is situated. 28 U.S.C. § 1391(b).

## PARTIES

18.    Plaintiff, 1201 West Girard Avenue, LLC ("1201 West Girard" or "Plaintiff") is a Pennsylvania limited liability company that will accept service at its counsel's office, located at 1524 Locust Street, Philadelphia, Pennsylvania 19102. Plaintiff is the owner of the Property, which is located at 1201 West Girard Avenue, Philadelphia, Pennsylvania 19123.

19.    Plaintiff, Ori Feibush ("Feibush" or "Plaintiff") is an adult individual and Pennsylvania resident that will accept service at its counsel's office, located at 1524 Locust Street, Philadelphia, Pennsylvania 19102.  Plaintiff Mr. Feibush is the principal and owner of Plaintiff 1201 West Girard Avenue, LLC, which owns the Property located at 1201 West Girard Avenue, Philadelphia, Pennsylvania 19123.

20.    Defendant Darrell L. Clarke ("Clarke" or "Defendant") is a resident of the City of Philadelphia and President of the Philadelphia City Council.  Council President Darrell L. Clarke is being sued in his personal capacity unless specifically pled otherwise.

4

## **FACTUAL BACKGROUND**

21.     Plaintiff 1201 West Girard Avenue, LLC is the owner of a property located at 1201 West Girard Avenue, Philadelphia, Pennsylvania 19123 (the "Property") and Plaintiff Ori Feibush is the owner and principal of 1201 West Girard Avenue, LLC.

22.     In or about 2020, Plaintiffs planned to build an apartment building on the Property, which was formerly used as a retail pharmacy (the "Development").

23.     The Development, which was recently completed, consists of 166 dwelling units and 31 vehicle parking spaces for a total gross floor area of 117,960 square feet.

24.     Plaintiffs' use for the Property is **as-of-right** and the zoning/use permit allowing the Development to proceed is issued over the counter without the need for any approval or review proceedings.

25.     On November 10, 2020, during a public Civic Design Review meeting at which the Development was introduced, Council President Clarke understood that the Property is zoned residential and effectively acknowledged that Plaintiffs' proposed Development was in accordance with the zoning code.

26.     On January 14, 2021, the Philadelphia Department of Licenses and Inspections ("L&I") issued Zoning/Use permit No. ZP-2020-002668 (the "January 14 Zoning Permit") as-of-right.

27.     The January 14 Zoning Permit authorized both demolition and the construction of multifamily housing.

28.     Due to custom and practice in L&I with respect to demolitions, on March 2, 2021, L&I issued Zoning Permit No. ZP-2021-00206 (the "March 2 Zoning Permit") as-of-right.

29.     The deadline to institute a legal challenge to the January 14, 2021 Permit was February 15, 2021.

30.     While the Property lies within Councilman Clarke's District, Defendant, as a Councilman, has no right to approve or disapprove the issuance of the January 14 Zoning Permit or any other development plans and/or permits of the Plaintiffs with respect to the Property.

31.     Council President Clarke, however, opposed the Development and baselessly challenged the January 14 Zoning Permit at the ZBA.[1]

32.     Council President Clarke stipulated to the accuracy and authenticity of the zoning plans approved by L&I (thereby waiving any challenge to the approved zoning permit under the Philadelphia Zoning Code), but challenged the zoning permit issued based on the introductory, preamble section of the Philadelphia Zoning Code.  ZBA counsel stated on the record that the basis for Council President Clarke's challenge to Plaintiffs' by-right permit "really aren't considerations."

33.     Council President Clarke committed an intentional tort and engaged in willful misconduct by deliberately abusing legal process and wrongfully procuring, instituting, and/or continuing civil proceedings by filing and prosecuting baseless legal challenges and interfering with Plaintiffs' as-of-right permit.

34.     At all times material hereto, Council President Clarke knew that Plaintiffs' by-right permit was issued in compliance with the zoning code and his legal challenge to revoke the permit was meritless.

---

[1] Council President Clarke untimely challenged the issuance of the January 14 Zoning Permit. Plaintiffs received confirmation on February 23, 2021 from the ZBA administrator that no completed appeal of the January 14 Zoning Permit was received. Curiously, Council President Clarke was somehow able to cure his plainly untimely challenge and permitted by the ZBA to proceed with his frivolous legal challenge.

35. Council President Clarke was able to gain traction for his meritless appeal by abusing his power to level threats against key individuals and thereby illicitly manipulate the legal process in his favor.

36. Council President Clarke's commission of the herein detailed willful misconduct brings his conduct outside the scope of his employment with the City of Philadelphia.

37. The legal challenge to any zoning permit – let alone a by-right permit – is outside of the scope of Council President Clarke's legislative powers and authority as a Philadelphia councilmember. Council President Clarke's appeal was instituted and prosecuted in his individual capacity, not his legislative capacity.

38. City Council never authorized Council President Clarke to institute his legal challenge to Plaintiffs' by-right permit.

39. At the June 9, 2021 ZBA hearing, Council President Clarke attempted to raise irrelevant and legally frivolous arguments against the issuance of the as-of-right permit.

40. No legitimate argument was presented by Council President Clarke or anyone on his behalf that would have any chance of success under the law.

41. At the June 9, 2021 ZBA hearing, Council President Clarke acknowledged with respect to his objections to the Development: "I know this may not necessarily have anything to do with the zoning…" This comment alone establishes Council President Clarke knew his legal challenge had no chance of success.

42. Within minutes of Council President Clarke expressing the basis for his legal challenge, both ZBA counsel and the City's counsel told him his challenge was meritless.

43. The City of Philadelphia's counsel repeatedly contested the arguments made by Council President Clarke.

44.     The City of Philadelphia was represented at the ZBA hearing by Senior Attorney Leonard F. Reuter. (*See* ZBA Tr. at 2:8-2:11) ("May it please the Board, Leonard F. Reuter, Senior Attorney for the City of Philadelphia. . . . I'm here for the City of Philadelphia.").

45.     Senior Attorney for the City of Philadelphia Leonard F. Reuter stated:

> So when City Council passes all these other provisions, they're basically, like for instance the provisions that allow this to be a by-right use in RM1, that City Council, by passing those use tables and those dimensional requirements that apply to RM properties, says that they, by definition, that the existence of that Code provision is saying that City Council believes that it is in full conformity with the purposes of the Zoning Code, in other words it's in full conformity with the purposes of 103. What we're talking about here is a disagreement about whether this project should be by-right in this zoning classification or in this particular neighborhood or whether this property should have been re-mapped, but both of those things are arguments about legislation that are for City Council to address. There's no legal argument here about why this permit application didn't meet the requirements of the Code. They're simply saying, this shouldn't have happened. And I'm not disagreeing that -- I have no idea whether it should have happened or not. I don't live in the neighborhood and we have full respect for Council President Clarke's position and his interest in his constituents, and we have full respect for the people that live in the neighborhood. Nevertheless, this is an RM1 property and the Code allows this, and the belief that maybe that provision shouldn't apply to this property or this should have been re-mapped so that this wouldn't have been allowed, that's not an argument that could possibly be successful in order to invalidate the permit. . . . the fact is that there's no legal argument here that I've been able to discern, at least not in the notice of appeal, as to what was actually wrong with the issuance of this permit.

(ZBA Tr. at 16:1-17:18.)

46.     Attorney Leonard Reuter further noted:

> The law is very clear on how, if you disagree with a mapping ordinance, how that's to be challenged. You know, again, I mean, that's not the issue in this case. The Zoning Board of Adjustment has no authority to address any challenges to mapping or re-mapping. So I mean, again, we're not trying to say that their

> concerns aren't valid, but this isn't the right place, you know, wrong
> church, wrong pew. This is not a Zoning Board issue.

(ZBA Tr. at 26:21-27:5.)

47.     In addition, Mr. Reuter recognized the illegitimacy of Councilman Clarke's legal action, stating: "It's an argument that should be made to City Planning. . . . But not at the Zoning Board. Thank you." (ZBA Tr. at 28:2-28:6.)

48.     At several junctures, Mr. Reuter reiterated the position of the City of Philadelphia:

> It's the City's position that there is no case that has been made here
> as to why the permit should not have been issued by right. . . . That
> being the case, we would also say that at this point, there has been
> no argument raised that would allow or that indicates in any kind of
> specifics why this permit couldn't have been issued, and so we
> therefore think that appellant has not met their burden.

(ZBA Tr. at 32:22-32:24; 34:4-34:8.)

49.     At the core of Council President Clarke's appeal was the contention that the City should have remapped the zoning, which had been constant since at least 1971. However, such an issue has no bearing on whether Plaintiffs' by-right permit should have been issued.

50.     It is patently obvious from record of the June 9, 2021 ZBA hearing that Council President Clarke's challenge to Plaintiffs' by-right permit had no chance of success as it was deemed meritless by ZBA counsel and the City's counsel on the record.

51.     Council President Clarke knew long before the June 9, 2021 ZBA hearing that the by-right permit issued to Plaintiffs to develop multifamily housing on the Property was in conformity with the law.   In fact, Council President Clarke acknowledged such permissible zoning use for the Property at the November 10, 2020 Civic Design Review meeting.

52.     Frustrated that the ZBA and Philadelphia Law Department were not capitulating to his frivolous demands to revoke or invalidate Plaintiff 1201 West Girard's by-right permit,

Council President Clarke called then-ZBA Chairman – *off the record* – to unlawfully influence the ZBA to vote in his favor and to intentionally interfere with Plaintiff 1201 West Girard's property interest. Council President Clarke corrupted the zoning process for his own political and/or personal gain.

53.     After Plaintiffs filed the initial complaint against the Defendant, former ZBA-Chairman conducted an interview with the Philadelphia Inquirer about this matter and "confirmed to The Inquirer that it was a call from Clarke" and "he agrees . . . that the zoning board's vote for Clarke's appeal was wrong because the permits were legal under the existing zoning." Blumgart, Jake, *Council President Darrell Clarke sued by developer Ori Feibush over N. Philly apartment building*, Philadelphia Inquirer (August 21, 2023).

54.     Council President Clarke's ex parte communication with the ZBA Chairman to interfere with the ZBA Chairman's duties and influence the ZBA's decision is strictly forbidden by law. *See* 53 P.S. § 10908(8) ("The board shall conduct hearings and make decisions in accordance with the following requirements . . . The board or the hearing officer shall not communicate, directly or indirectly, with any party or his representatives in connection with any issue involved except upon notice and opportunity for all parties to participate, shall not take notice of any communication, reports, staff memoranda, or other materials, except advice from their solicitor, unless the parties are afforded an opportunity to contest the material so noticed and shall not inspect the site or its surroundings after the commencement of hearings with any party or his representative unless all parties are given an opportunity to be present."); *see also* Phila. Home Rule Charter § 10-100 ("no councilmember shall . . . interfere with the performance of the

10

duties of the members . . . or of any other employees in any department, board or commission of the City.")[2]

55.     One week after the June 9, 2021 ZBA hearing, the ZBA "Approved" Council President Clarke's appeal without explanation and thereby revoked and invalidated Plaintiffs' by-right permit. A copy of the June 16, 2021 ZBA Notice of Decision is attached hereto as **Exhibit "1."**

56.     The ZBA approved the frivolous appeal because they were threatened and/or intimidated by Council President Clarke and/or following a legally baseless municipal custom to defer to Council President Clarke (which he reinforced with threats).

57.     Plaintiffs were advised the Council President Clarke abused his power as Council President to influence and threaten ZBA members to vote in favor of his frivolous legal challenge.

58.     By way of limited example, to influence the decision, opinion, recommendation and/or vote of one or more ZBA members, Council President Clarke threatened their positions.

59.     Based on these reports, Council President Clarke may have engaged in criminal conduct under 18 Pa. C.S. § 4701, 18 Pa. C.S. § 4702, and/or 18 U.S.C. § 1346.

60.     Council President Clarke's conduct to influence the ZBA and/or its individual members constitutes a scheme or artifice to deprive Plaintiffs of the right of honest services and to intentionally interfere with a constitutionally protected right of Plaintiffs.

---

[2] *See* Annotation #3 to Phila. Home Rule Charter § 10-100 ("Councilmen are emphatically prohibited from interfering with the performance of the duties of any employees in the executive and administrative branch of the City government. An employee should perform his duties as required by law and by his superiors and not because of a fear of legislative retaliation, whether or not such fear is in fact warranted.")

61.     Council President Clarke called *at least* one ZBA member, demanding the ZBA to rule in his favor and thereby revoke Plaintiffs' by-right permit even though he knew Plaintiffs' entitlement to the permit is as-of-right.

62.     Council President Clarke's frivolous legal challenge seriously impeded the Development throughout the ZBA action and the subsequent Philadelphia Court of Common Pleas appeal (the "Underlying Action").

63.     Because it was not clear which permit Defendant Clarke had challenged, or the basis of the ZBA's decision, Plaintiff 1201 West Girard filed a Motion for Reconsideration on June 25, 2021.

64.     Council President Clarke continued to abuse his power to apply unlawful pressure on the ZBA to avoid it from forming a quorum and/or voting on Plaintiffs' Motion for Reconsideration.

65.     Finally, the ZBA agreed to reconsider the June 16, 2021 decision and a hearing was held on November 2, 2021.   On reconsideration the ZBA denied Council President Clarke's legal challenge.  A copy of the November 10, 2021 ZBA Notice of Decision is attached hereto as **Exhibit "2."**

66.     Despite the initial legal challenge being obviously frivolous, and having also been alerted by the City of Philadelphia's Senior Attorney and ZBA counsel that his appeal is baseless, Council President Clarke appealed the ZBA's decision to the Philadelphia Court of Common Pleas. A copy of the Notice of Statutory Appeal is attached hereto as **Exhibit "3."**

67.     On October 24, 2022, the Philadelphia Court of Common Pleas issued an Order, affirming the decision of the ZBA. A true and correct copy of the Order is attached as **Exhibit "4."**

68.     The Philadelphia Court of Common Pleas held:

> Appellant is challenging the issuance of a by-right zoning permit. A development is "by-right" if it is permitted by the zoning code. Such a permitted use is "allowed absolutely and unconditionally." *Aldridge v. Jackson Twp.*, 983 A2d 247, 257 n.8 (Pa. Commw. 2009). While acknowledging that the permit is by-right, Appellant argues that the proposed development does not conform to the general purpose of the Zoning Code regarding the impact of new construction on the surrounding community, as set forth in the § 14-101. The flaw in Appellant's logic is that the aspirational policy considerations set forth in§ 14-101 are not a substitute for the actual language of the various zoning provisions. Moreover, it is reasonable to conclude that the policy considerations were factored into the process through the property at issue was zoned. It is not lost on the Court that Appellant himself – and their entire City Council - are tasked with approving the zoning overlays that the developer relied upon. Thus, because developer properly relied on the by-right zoning permit, and the ZBA properly concluded, after reconsideration, that the by-right permit had been correctly issued, this Court will deny the appeal.

69.     Plaintiffs had a vested right in the as-of-right January 14 Zoning Permit and/or March 2 Zoning Permit and certain contractual agreements based on the issuance and continued existence of the permits.

70.     Because of Council President's abuse of power as well as his frivolous and unfounded legal challenge, Plaintiffs' Development was functionally impaired and seriously delayed.

71.     Council President Clarke acted willfully, deliberately, and maliciously in his engagement of the misconduct detailed herein, which is **not** within the scope of his employment with the City of Philadelphia and does **not** fall within a councilmember's legislative duties and/or functions.

72.     Since Council President Clarke engaged in willful misconduct by abusing his power and the legal process, and wrongfully procuring, initiating and/or continuing civil

proceedings, as further detailed herein, he shall not be afforded governmental immunity. *See Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1023 (Pa. Commw. Ct. 2014) ("[Plaintiff] is correct, and Defendants do not dispute, that governmental immunity will not bar claims against [the city solicitor Defendant] where his actions constituted willful misconduct.")

73.     Council President Clarke abused his power to intentionally interfere with Plaintiffs' by-right permit, impede the Development, and financially harm to Plaintiffs. At the very least, Council President Clarke was aware that his abuse of power, willful misconduct, and intentional interference with Plaintiffs' property interest would impede the Development and/or financial harm to Plaintiffs was substantially certain to ensue.

74.     As a direct and proximate consequence of Council President Clarke's wrongful conduct, Plaintiffs' borrowing costs increased by over Two Million Dollars ($2,000,000.00) per year.

75.     Furthermore, Plaintiff 1201 West Girard was not only charged a higher interest rate due to the patently frivolous litigation pursued by Council President Clarke, but Plaintiff Ori Feibush had to personally guarantee the debt which reduced his ability to fund other profitable projects.

76.     In addition, Plaintiffs have incurred substantial attorneys' fees and costs to respond and defend themselves in the Underlying Action, which was wrongfully procured, initiated, and continued by Council President Clarke.

77.     Plaintiffs institute this action to recover for the immense financial harm, among other significant damages, caused by Council President Darrell L. Clarke's abuse of power, intentional interference with Plaintiffs' property interest, wrongful use of civil proceedings, abuse of process, and other harmful conduct as detailed herein.

## COUNT I
### WRONGFUL USE OF CIVIL PROCEEDINGS
### (42 Pa. C.S.A. § 8351)
### PLAINTIFF 1201 WEST GIRARD v. DEFENDANT DARRELL L. CLARKE

78.     Plaintiffs incorporate by reference all allegations of this Complaint as if the same were fully set forth herein.

79.     Council President Darrell L. Clarke procured, initiated, and/or continued civil proceedings against Plaintiff 1201 West Girard Avenue in a grossly negligent manner and/or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties, and/or adjudication of the claim and/or zoning appeal in which the proceedings are based.

80.     The Underlying Action procured, initiated, and/or continued by Council President Darrell L. Clarke has terminated in favor of Plaintiff 1201 West Girard Avenue.

81.     On October 24, 2022, the Philadelphia Court of Common Pleas issued an order, affirming the reconsidered decision of the ZBA in favor of Plaintiff 1201 West Girard. A true and correct copy of the Order is attached as **Exhibit "4."**

82.     Council President Darrell L. Clarke's conduct clearly violates 42 Pa. C.S.A. § 8351.

83.     Council President Clarke procured, initiated, and continued the Underlying Action without reasonably believing that, under the facts pled, any claim may be valid under existing or developing law.

84.     Council President Clarke knew long before the June 9, 2021 ZBA hearing that the by-right permit issued to Plaintiff 1201 West Girard to develop multifamily housing on the Property was in conformity with the law.  In fact, Council President Clarke acknowledged such permissible zoning use for the Property at the November 10, 2020 Civic Design Review meeting.

85.     At the June 9, 2021 ZBA hearing, Council President Clarke acknowledged with respect to this legal challenge: "I know this may not necessarily have anything to do with the zoning . . ."

86.     Shortly thereafter, Senior Attorney for the City of Philadelphia Law Department stated on the record in presence of Council President Clarke: "There's no legal argument here about why this permit application didn't meet the requirements of the Code. . . . this is an RM1 property and the Code allows this, and the belief that maybe that provision shouldn't apply to this property or this should have been re-mapped so that this wouldn't have been allowed, that's not an argument that could possibly be successful in order to invalidate the permit. . . . the fact is that there's no legal argument here that I've been able to discern, at least not in the notice of appeal, as to what was actually wrong with the issuance of this permit."

87.     Despite Council President Clarke personally acknowledging Plaintiff 1201 West Girard's permissible zoning use for the Property and being directly told by ZBA counsel and the Law Department that his legal challenge is patently meritless, he initiated and continued the Underlying Action before the ZBA and later appealed its reconsidered decision to the Philadelphia Court of Common Pleas.

88.     Given the facts set forth above, it is apparent that Council President Clarke procured, initiated, and continued the Underlying Action against Plaintiff 1201 West Girard in a grossly negligent manner and/or without probable cause.

89.     Council President Clarke procured, initiated, and continued the Underlying Action primarily for a purpose other than that of securing the proper discovery, joinder of parties, and/or adjudication of the claim and/or zoning appeal in which the proceedings are based.

90. Council President Clarke knew his legal challenge had no merit but initiated and continued it for his own political and personal gain, not for the purpose of properly adjudicating any legitimate legal claim.

91. Since Council President Clarke knew the ZBA could never adjudicate the matter in his favor in light of the law, he engaged in ex parte communications with the ZBA, among other tactics, to unlawfully influence the ZBA's decision. This behavior alone proves that Council President Clarke did not procure, initiate, and continue the Underlying Action primarily for a purpose of securing "*proper*" adjudication of any claim. 42 Pa. C.S.A. § 8351. Instead, he resorted to corrupting the legal process through threats, intimidation, and influence.

92. As evident by Council President Clarke's misconduct, he acted with actual malice.

93. As detailed above, Council President Clarke knew that the false and frivolous allegations described in his filings in the Underlying Action were false and/or lacked probable cause.

94. Nevertheless, Council President Clarke wrongfully procured, initiated, and continued the Underlying Action.

95. As a direct and proximate result of Council President Clarke's wrongful use of civil proceedings, Plaintiff 1201 West Girard has sustained significant damage and harm, including:

     a. Attorneys' fees and expenses;

     b. Damages due to increase loan and construction costs relating to the delays in constructing the development due to the Underlying Action;

     c. Significant opportunity costs; and

     d. Other pecuniary and/or financial losses.

17

96.     Council President Clarke's conduct was malicious, outrageous, willful, oppressive, and/or exhibited reckless indifference to Plaintiff 1201 West Girard. Council President Clarke's conduct warrants the imposition of significant punitive damages.

**WHEREFORE**, Plaintiff 1201 West Girard demands judgment in its favor, and against Council President Darrell L. Clarke, in his individual capacity, in an amount well in excess of Two Million Dollars ($2,000,000.00), together with pre- and post-judgment interest thereon, punitive damages, legally permissible costs of suit, and such other and further relief as this Honorable Court may deem just and proper.

## COUNT II
## ABUSE OF PROCESS
### PLAINTIFF 1201 WEST GIRARD v. DEFENDANT DARRELL L. CLARKE

97.     Plaintiffs incorporate by reference all allegations of this Complaint as if the same were fully set forth herein.

98.     To establish a claim for abuse of process, it must be shown that Council President Clarke (1) used a legal process against the Plaintiffs, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to Plaintiffs.

99.     Abuse of process has been described by the Supreme Court of Pennsylvania as the "use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process."

100.    Council President Darrell L. Clarke has plainly abused the process in the Underlying Action.

101.    First, Council President Clarke instituted and prosecuted a meritless legal challenge against Plaintiff 1201 West Girard to revoke and/or invalidate its issued as-of-right

permit. This legal process was initiated at the ZBA and continued through Council President Clarke's appeal to the Philadelphia Court of Common Pleas.

102. Second, Council President Clarke used the legal process primarily to accomplish a purpose for which the process was not designed, such as for political and/or personal reasons.

103. Council President Clarke used the legal process to express and/or further his political and/or personal preferences and not to challenge any legitimate zoning issue.

104. The legal process involving the ZBA is designed to address legitimate zoning issues. Council President Clarke did not present a legitimate zoning issue to the ZBA. Rather, Council President Clarke used the ZBA's legal process for the purpose of interfering with the Development and Plaintiffs' use of the Property. The ZBA's legal process is not designed for individuals, like Council President Clarke, to frustrate property rights and impede the lawful use of one's land.

105. Council President Clarke used the legal process to impede the Development and inflict harm on Plaintiffs (Council President Clarke has made it known that he intended to harm Plaintiffs directly and/or indirectly by instituting and continuing the frivolous Underlying Action).

106. The legal process involving zoning permits is not a proceeding whereby Council President Clarke's personal and/or political preferences and vendettas may be pursued as a viable means of retribution and/or ever be considered as a viable challenge to a zoning permit.

107. Council President Clarke's legal challenge to the issuance of an as-of-right permit to the ZBA, and his appeal to the Philadelphia Court of Common Pleas upon receiving an unfavorable ruling from the ZBA, were used primarily to accomplish a purpose for which the process was not designed.

108.   Council President Clarke did not file and prosecute his legal challenge to revoke and/or overturn the issuance of an as-of-right permit. (There was no legitimate basis to overturn the issuance of an as-of-right permit.)  Instead, Defendant Clarke filed and prosecuted his appeals in an effort to financially harm Plaintiffs, attain personal and/or political gain, impede and delay the Development, and/or obtain leverage over Plaintiffs to negotiate for concessions unrelated to the Property and/or Plaintiffs' by-right permits.

109.   Plaintiffs rejected Council President Clarke's efforts to use the Underlying Action for personal and/or political gain.

110.   Council President Clarke misused a legal proceeding and/or process solely and/or primarily for an improper ulterior purpose, which has caused significant damages to Plaintiffs.

111.   As a direct and proximate result of Council President Clarke's misconduct, Plaintiffs have suffered immense damage and harm.

112.   Specifically, Plaintiff 1201 West Girard has been harmed due to Council President Clarke's abuse of process as follows:

    a.   Attorneys' fees and costs in the Underlying Action;

    b.   Damages due to increase loan and construction costs relating to the delays in constructing the Development due to the Underlying Action;

    c.   Significant opportunity costs; and

    d.   Other pecuniary and/or financial losses.

113.   Council President Clarke's conduct was a gross perversion of the legal process in order to further his personal and/or political gain, extract improper concessions from Plaintiffs, and/or to interfere with Plaintiffs' development of the Property.

114.   Council President Clarke's perversion of the legal process can be easily gleaned from his unlawful ex parte communications with the ZBA, during which he threatened, intimidated and/or otherwise interfered with the ZBA in order to influence it to reach the wrong decision and vote in favor of his frivolous legal challenge. Such behavior is explicitly forbidden under Section 10-100 of the Philadelphia Home Rule Charter.

115.   As evident by Council President Clarke's misconduct, he acted with actual malice.

116.   Council President Clarke acted with the specific purpose of harming Plaintiffs, interfering with Plaintiffs' development of the Property, and forcing Plaintiffs to spend substantial sums to defend the Underlying Action, which was initiated and continued for the purpose of harming Plaintiffs and furthering Council President Clarke's personal and/or political agenda.

117.   Council President Clarke's conduct was part of a continuing pattern of behavior which began with Council President Clarke's initiation of Underlying Action and continued throughout Council President Clarke's appeal to the Philadelphia Court of Common Pleas and continued prosecution of the matter.

118.   During the course of the Underlying Action, Council President Clarke communicated ex parte with the ZBA, threatened members of the ZBA, and intimidated ZBA members, all in an effort to interfere with Plaintiffs' by-right permits, cause immense financial harm to Plaintiffs and extract unfounded concessions from Plaintiffs.

119.   Council President Clarke's conduct was malicious, outrageous, willful, oppressive, and/or exhibited reckless indifference to Plaintiff 1201 West Girard. Council President Clarke's conduct warrants the imposition of significant punitive damages.

**WHEREFORE**, Plaintiff 1201 West Girard demands judgment in its favor, and against Council President Darrell L. Clarke, in his individual capacity, in an amount well in excess of

Two Million Dollars ($2,000,000.00), together with pre- and post-judgment interest thereon, punitive damages, legally permissible costs of suit, and such other and further relief as this Honorable Court may deem just and proper.

**COUNT III**
**ABUSE OF PROCESS**
**PLAINTIFF ORI FEIBUSH v. DEFENDANT DARRELL L. CLARKE**

120.    Plaintiffs incorporate by reference all allegations of this Complaint as if the same were fully set forth herein.

121.    To establish a claim for abuse of process, it must be shown that Council President Clarke (1) used a legal process against the Plaintiffs, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to Plaintiffs.

122.    Abuse of process has been described by the Supreme Court of Pennsylvania as the "use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process."

123.    Council President Darrell L. Clarke has plainly abused the process in the Underlying Action.

124.    First, Council President Clarke instituted and prosecuted a meritless legal challenge concerning the issuance of Plaintiffs' January 14 Zoning Permit, which was issued to Plaintiffs as-of-right. This legal process was initiated at the ZBA and continued through Council President Clarke's appeal to the Philadelphia Court of Common Pleas.

125.    Second, Council President Clarke used the legal process primarily to accomplish a purpose for which the process was not designed, such as for political and/or personal reasons.

126.    Council President Clarke used the legal process to express and/or further his political and/or personal preferences and not to challenge any legitimate zoning issue.

127.    The legal process involving the ZBA is designed to address legitimate zoning issues. Council President Clarke did not present a legitimate zoning issue to the ZBA. Rather, Council President Clarke used the ZBA's legal process for the purpose of interfering with the Development and Plaintiffs' use of the Property. The ZBA's legal process is not designed for individuals, like Council President Clarke, to frustrate property rights and impede the lawful use of one's land.

128.    Council President Clarke used the legal process to impede the Development and inflict harm on Plaintiffs (Council President Clarke has made it known that he intended to harm Plaintiffs directly and/or indirectly by instituting and continuing the frivolous Underlying Action).

129.    The legal process involving zoning permits is not a proceeding whereby Council President Clarke's personal and/or political preferences and vendettas may be pursued as a viable means of retribution and/or ever be considered as a viable challenge to a zoning permit.

130.    Council President Clarke's legal challenge to the issuance of an as-of-right permit to the ZBA, and his appeal to the Philadelphia Court of Common Pleas upon receiving an unfavorable ruling from the ZBA, were used primarily to accomplish a purpose for which the process was not designed.

131.    Council President Clarke did not file and prosecute his legal challenge to revoke and/or overturn the issuance of an as-of-right permit. (There was no legitimate basis to overturn the issuance of an as-of-right permit.) Instead, Defendant Clarke filed and prosecuted his appeals in an effort to financially harm Plaintiffs, attain personal and/or political gain, impede and delay the Development, and/or obtain leverage over Plaintiffs to negotiate for concessions unrelated to the Property and/or Plaintiffs' by-right permits.

132.    Plaintiffs rejected Council President Clarke's efforts to use the Underlying Action for personal and/or political gain.

133.    Council President Clarke misused a legal proceeding and/or process solely and/or primarily for an improper ulterior purpose, which has caused significant damages to Plaintiffs.

134.    As a direct and proximate result of Council President Clarke's misconduct, Plaintiffs have suffered immense damage and harm.

135.    Specifically, Plaintiff Ori Feibush has been harmed due to Council President Clarke's abuse of process as follows:

  a.   Attorneys' fees and costs in the Underlying Action;

  b.   Damages for having to personally guarantee the Property's debt, which reduced his ability to fund other profitable projects;

  c.   Significant opportunity costs; and

  d.   Other pecuniary and/or financial losses.

136.    Council President Clarke's conduct was a gross perversion of the legal process in order to further his personal and/or political gain, extract improper concessions from Plaintiffs, and/or to interfere with Plaintiffs' development of the Property.

137.    Council President Clarke's perversion of the legal process can be easily gleaned from his unlawful ex parte communications with the ZBA, during which he threatened, intimidated and/or otherwise interfered with the ZBA in order to influence it to reach the wrong decision and vote in favor of his frivolous legal challenge. Such behavior is explicitly forbidden under Section 10-100 of the Philadelphia Home Rule Charter.

138.    As evident by Council President Clarke's misconduct, he acted with actual malice.

139.     Council President Clarke acted with the specific purpose of harming Plaintiffs, interfering with Plaintiffs' development of the Property, and forcing Plaintiffs to spend substantial sums to defend the Underlying Action, which was initiated and continued for the purpose of harming Plaintiffs and furthering Council President Clarke's personal and/or political agenda.

140.     Council President Clarke's conduct was part of a continuing pattern of behavior which began with Council President Clarke's initiation of Underlying Action and continued throughout Council President Clarke's appeal to the Philadelphia Court of Common Pleas and continued prosecution of the matter.

141.     During the course of the Underlying Action, Council President Clarke communicated ex parte with the ZBA, threatened members of the ZBA, and intimidated ZBA members, all in an effort to interfere with Plaintiffs' by-right permits, cause immense financial harm to Plaintiffs and extract unfounded concessions from Plaintiffs.

142.     Council President Clarke's conduct was malicious, outrageous, willful, oppressive, and/or exhibited reckless indifference to Plaintiff Ori Feibush. Council President Clarke's conduct warrants the imposition of significant punitive damages.

**WHEREFORE**, Plaintiff Ori Feibush demands judgment in his favor, and against Council President Darrell L. Clarke, in his individual capacity, in an amount well in excess of Two Million Dollars ($2,000,000.00), together with pre- and post-judgment interest thereon, punitive damages, legally permissible costs of suit, and such other and further relief as this Honorable Court may deem just and proper.

## COUNT IV
## INTENTIONAL TORTIOUS INTERFERENCE WITH
## PROSPECTIVE AND/OR EXISTING CONTRACTUAL RELATIONS
## PLAINTIFF 1201 WEST GIRARD v. DEFENDANT DARRELL L. CLARKE

143.    Plaintiffs incorporate by reference all allegations of this Complaint as if the same were fully set forth herein.

144.    Intentional tortious interference with prospective or existing contractual relations consists of the following elements:

      1.   The existence of a contractual, or prospective contractual relation between the plaintiff and a third party;

      2.   Purposeful action on the part of the defendant, intended to harm the existing relation or to prevent a prospective relation from occurring;

      3.   The absence of privilege or justification on the part of the defendant; and

      4.   Actual damage resulting from the defendant's conduct.

145.    Plaintiff 1201 West Girard had several prospective and existing contractual relations with third parties dependent on its issued by-right permits.

146.    Council President Clarke was aware from his prior experience and/or dealings, as well as from information provided to him before and during the course of the Underlying Action, that Plaintiff 1201 West Girard had various prospective and existing contractual relations relating to the Development of the Property, including those contractual relations listed below.

147.    Council President Clarke was aware that Plaintiff 1201 West Girard's prospective and existing contractual relations were materially dependent upon its by-right permits. He had specific knowledge of the contractual rights upon which his actions infringed.

148.   Council President Clarke intentionally and with purposeful action interfered with and/or prevented the existing and/or prospective contractual relations by wrongfully interfering with Plaintiff 1201 West Girard's by-right permits.

149.   Council President Clarke does not have any privilege or justification for his intentional tortious interference with Plaintiff 1201 West Girard's prospective or existing contractual relations.

150.   Council President Clarke is expressly prohibited from engaging in the conduct he did in the Underlying Action. *See* Phila. Home Rule Charter § 10-100.

151.   By way of limited example, the following existing contractual relations were intentionally and tortiously interfered with by Council President Clarke and thereby harmed and/or prevented as a direct result of his abuse of power and willful misconduct (as set forth above):

  a.   Plaintiff 1201 West Girard had contractual relations with its preferred lender to finance the Development under certain terms;

  b.   Plaintiff 1201 West Girard had contractual obligations with contractors to develop the Property;

  c.   Plaintiff 1201 West Girard had contractual obligations with its investors it was unable to fulfill;

  d.   Plaintiff 1201 West Girard had contractual obligations with a separate subordinate lender that it was unable to fulfill;

  e.   Plaintiff 1201 West Girard has a contractual obligation to satisfy an acquisition loan that it could not perform on; and

      f.   Plaintiff 1201 West Girard had other contractual relations dependent on its by-right permits.

152.    By way of limited example, the following prospective contractual relations were intentionally and tortiously interfered with by Council President Clarke and thereby harmed and/or prevented as a direct result of his abuse of power and willful misconduct (as set forth above):

      a.   Plaintiff 1201 West Girard had prospective contractual relations with its preferred lender to finance the Development under certain terms;

      b.   Plaintiff 1201 West Girard had prospective contractual obligations with contractors to develop the Property; and

      c.   Plaintiff 1201 West Girard had other prospective contractual relations dependent on its by-right permits.

153.    As a direct and proximate result of Council President Clarke's intentional tortious interference with several prospective and existing contractual relations of Plaintiff 1201 West Girard, it has incurred millions of dollars in actual damages.

154.    Council President Clarke's conduct was malicious, outrageous, willful, oppressive, and/or exhibited reckless indifference to Plaintiff 1201 West Girard. Council President Clarke's conduct warrants the imposition of significant punitive damages.

**WHEREFORE**, Plaintiff 1201 West Girard demands judgment in its favor, and against Council President Darrell L. Clarke, in his individual capacity, in an amount well in excess of Two Million Dollars ($2,000,000.00), together with pre- and post-judgment interest thereon, attorneys' fees, punitive damages, legally permissible costs of suit, and such other and further relief as this Honorable Court may deem just and proper.

COUNT V
42 U.S.C. § 1983
SUBSTANTIVE DUE PROCESS VIOLATION
PLAINTIFF 1201 WEST GIRARD v. DEFENDANT DARRELL L. CLARKE

155.     Plaintiffs incorporate by reference all allegations of this Complaint as if the same were fully set forth herein and this claim and its allegations are pled in the alternative to the extent there is a conflict with an allegation set forth above. This claim is brought against Defendant Darrell L. Clarke in his individual and/or official capacity.

156.     A violation of Plaintiff 1201 West Girard's substantive due process rights exist in this instance because Council President Clarke's abuse of his power was so clearly unjustified by any legitimate objective of law enforcement as to be barred by the Fourteenth Amendment.

157.     Council President Clarke was acting under color of state or municipal law. He instituted and continued the Underlying Action "as designated representative of Philadelphia City Council". He also introduced himself at the June 9, 2021 ZBA hearing as "Council President Darrell Clarke, Councilman, Fifth District[.]" (ZBA Tr. at 9:1-9:3.)

158.     To establish a violation of substantive due process, a plaintiff must show: (1) a property interest protected by the Fourteenth Amendment and (2) deprivation of that interest due to behavior by government officials that shocks the conscience.

159.     At all times material hereto, Plaintiff 1201 West Girard Avenue maintained a property interest in its issued as-of-right permits for the Property.

160.     Substantive due process rights are violated by government officials when those officials' behavior "shocks the conscience."

161.     The Supreme Court of the United States has held that a substantive due process claim is most probably supported by "conduct intended to injure in some way unjustifiable by

any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

162.     The Third Circuit has explained: "Conduct that may shock the conscience varies depending on the factual context. In the land-use context, we look for evidence of corruption, self-dealing, intentional interference with constitutionally protected activity, virtual 'takings,' or bias against an ethnic group on the part of local officials." *Button v. Snelson*, 679 Fed.Appx. 150, 154 (3d Cir. 2017) (internal citations and quotation marks omitted.)

163.     Council President Clarke abused his power and intentionally interfered with Plaintiff's constitutionally protected activity by wrongfully using civil proceedings, abusing the legal process, and engaging in the aforementioned intentional misconduct (such as threatening and intimidating ZBA members) that has directly interfered with Plaintiff 1201 West Girard's use of its as-of-right permits.

164.     Council President Clarke corrupted the zoning process in the Underlying Action by directly and/or indirectly threatening ZBA members to vote in favor of his frivolous legal challenge, which was instituted – not to avail himself of a legitimate zoning appeal – but rather to inflict financial harm on Plaintiffs, frustrate the Development, further his political and/or personal agenda, and/or extract unfounded concessions from Plaintiffs.

165.     Council President Clarke directly contacted influential individuals at the ZBA to level threats, corrupt the proceeding, and secure an illicit ruling in favor of his frivolous legal challenge.

166.     By way of further limited example, during the June 9, 2021 ZBA hearing, Council President Clarke suspiciously took a call at the same moment as a ZBA member. It is believed, and therefore averred, that Council President Clarke was threatening and/or influencing the ZBA

with ex parte communications to intentionally interfere with Plaintiff 1201 West Girard's property interest and corrupt the zoning process for his own political and/or personal gain.

167.    After Plaintiffs filed the initial complaint against the Defendant, former ZBA-Chairman conducted an interview with the Philadelphia Inquirer about this matter and "confirmed to The Inquirer that it was a call from Clarke" and "he agrees . . . that the zoning board's vote for Clarke's appeal was wrong because the permits were legal under the existing zoning." Blumgart, Jake, *Council President Darrell Clarke sued by developer Ori Feibush over N. Philly apartment building*, Philadelphia Inquirer (August 21, 2023).

168.    By way of additional example, after the June 9, 2021 ZBA hearing, Council President Clarke continued to threaten, influence and/or interfere with the ZBA (and Plaintiff 1201 West Girard's constitutional rights) because each time Plaintiffs would appear before the ZBA (for *many* months) to request reconsideration of the Clarke-corrupted decision to revoke Plaintiff 1201 West Girard's as-of-right permit, it would suspiciously fail to reach a quorum and/or suddenly lose its quorum and be unable to act on Plaintiff 1201 West Girard's motion. Plaintiffs have come before the ZBA on many occasions over the years and this behavior is unusual and reeks of a corrupting force.

169.    Council President Clarke's misconduct did **not** occur in his capacity as a legislator and he was **not** exercising any legislative power.

170.    Plaintiff 1201 West Girard had a property interest in its by-right zoning permits, which is protected by the Fourteenth Amendment, and Council President Clarke deprived Plaintiff of that interest by plainly abusing his power and engaging in the wrongful conduct set forth herein.

171.    Council President Clarke's misconduct is of the most egregious nature and shocks the conscience because he intentionally corrupted a legal process and interfered with constitutionally protected activity.

172.    Plaintiff 1201 West Girard seeks significant damages for Council President Clarke's violation of Plaintiff 1201 West Girard's constitutional rights, which were clearly established at the time Council President Clarke engaged in the misconduct at issue.

173.    Council President Clarke has acted with a reckless or callous disregard of, or indifference to, the rights of Plaintiff 1201 West Girard, thereby warranting the imposition of punitive damages.

**WHEREFORE**, Plaintiff 1201 West Girard demands judgment in its favor, and against Council President Darrell L. Clarke and/or the City of Philadelphia, in an amount well in excess of Two Million Dollars ($2,000,000.00), together with pre- and post-judgment interest thereon, attorneys' fees, punitive damages, legally permissible costs of suit, and such other and further relief as this Honorable Court may deem just and proper.

### COUNT VI
### 42 U.S.C. § 1983
### EQUAL PROTECTION VIOLATION
### <u>PLAINTIFF 1201 WEST GIRARD v. DEFENDANT DARRELL L. CLARKE</u>

174.    Plaintiffs incorporate by reference all allegations of this Complaint as if the same were fully set forth herein, and this claim is pled in the alternative to the extent it conflicts with an allegation set forth above. This claim is brought against Defendant Darrell L. Clarke in his individual and/or official capacity.

175.    Council President Clarke was acting under color of state or municipal law. He instituted and continued the Underlying Action "as designated representative of Philadelphia City

Council". He also introduced himself at the June 9, 2021 ZBA hearing as "Council President Darrell Clarke, Councilman, Fifth District" (ZBA Tr. at 9:1-9:3.)

176.   Plaintiff 1201 West Girard has been intentionally treated different by Council President Clarke from others similarly situated and there is no rational basis for the difference in treatment.

177.   Council President Clarke, as detailed at length above, abused his power and the legal process to intentionally target Plaintiff 1201 West Girard through its by-right permits to interfere with its property interest and frustrate the Development.

178.   There is no rational basis for Council President Clarke to challenge Plaintiff 1201 West Girard's by-right permits, take action to threaten ZBA members and otherwise manipulate the legal process in order to interfere with Plaintiff 1201 West Girard's property interest and frustrate the Development.

179.   Plaintiffs have been informed that Council President Clarke expressed fervent discontent with respect to Plaintiff 1201 West Girard developing within his district.

180.   There are many persons and/or entities similarly situated with by-right permits, engaging in similar development to Plaintiff 1201 West Girard, in Council President Clarke's district that were not subjected to the same intentional and irrational treatment that Plaintiff 1201 West Girard was.

181.   Council President Clarke has expressed and acted on a totally irrational basis against Plaintiff 1201 West Girard and its property interest, as detailed above.

182.   Council President Clarke singled out Plaintiff 1201 West Girard for discriminatory treatment due to spite, vindictiveness, or some other irrational reason.

183.    Council President Clarke has acted with a reckless or callous disregard of, or indifference to, the rights of Plaintiff 1201 West Girard, thereby warranting the imposition of punitive damages.

**WHEREFORE**, Plaintiff 1201 West Girard demands judgment in its favor, and against Council President Darrell L. Clarke and/or the City of Philadelphia, in an amount well in excess of Two Million Dollars ($2,000,000.00), together with pre- and post-judgment interest thereon, attorneys' fees, punitive damages, legally permissible costs of suit, and such other and further relief as this Honorable Court may deem just and proper.

**COUNT VII**
**42 U.S.C. § 1983**
**MONELL**
**PLAINTIFF 1201 WEST GIRARD v. DEFENDANT DARRELL L. CLARKE**

184.    Plaintiffs incorporate by reference all allegations of this Complaint as if the same were fully set forth herein, and this claim is pled in the alternative to the extent it conflicts with an allegation set forth above. This *Monell* claim is brought against Defendant Darrell L. Clarke in his individual and/or official capacity.

185.    "To succeed on a *Monell* claim, a plaintiff must show by a preponderance of the evidence that his constitutional rights were violated and that a municipal custom or policy was the 'moving force' behind his injuries." *Feibush v. Johnson*, 203 F.Supp.3d 489, 496 (E.D. Pa. 2016) (internal citations omitted.)

186.    Here, Council President Clarke violated Plaintiff 1201 West Girard's constitutional property right and one or more municipal customs and/or policies were the moving force behind the injuries.

187.    Council President Clarke was acting under color of state or municipal law. He instituted and continued the Underlying Action "as designated representative of Philadelphia City

34

Council". He also introduced himself at the June 9, 2021 ZBA hearing as "Council President Darrell Clarke, Councilman, Fifth District" (ZBA Tr. at 9:1-9:3.)

188.    Council President Clarke's intentional interference with Plaintiff 1201 West Girard's by-right permits impaired its ability to use the real property located at 1201 West Girard Avenue, Philadelphia, Pennsylvania 19123 as intended.

189.    Specifically, Council President Clarke availed himself of councilmanic prerogative and/or a required custom deference provided to him as a councilmember by the ZBA when he challenged Plaintiff 1201 West Girard's as-of-right permits.  Based on the councilmanic prerogative and/or a customary deference – which constitute municipal policies and/or customs – the ZBA revoked and/or invalidated Plaintiff 1201 West Girard's by-right permit and thereby caused 1201 West Girard immense financial harm.

190.    Upon information and belief, it is also a custom and/or policy of the ZBA to confer with a district's councilmember before ruling on a zoning permit in their district.

191.    Council President Clarke directly and/or indirectly reinforced the municipal custom and/or policy by threatening and/or intimidating the ZBA members at several junctures to ensure they made the wrong decision to revoke Plaintiff's as-of-right permit and impede the Development.  This misconduct may be considered a custom and/or policy of the City.

192.    Representatives for the City of Philadelphia told Plaintiffs that they knew Council President Clarke's legal challenge was frivolous and illegitimate, but that he may be afforded the customary deference before the ZBA, and a patently incorrect decision caused by the Defendant may result.

193.    The City further told Plaintiffs that if Council President Clarke's frivolous challenge were to be approved by the ZBA, the City would not challenge it.  The City's behavior

of not sufficiently challenging and/or appealing wrongful deference to councilmembers by the ZBA is another policy and/or custom at play in this action.

194.    Upon information and belief, it is a custom or policy of the ZBA to unjustifiably cure a government official and/or councilmember's defective (i.e., untimely) legal challenges to allow them to proceed.

195.    Upon information and belief, the City also maintains a custom that concerns a failure to train or supervise members and/or employees of the ZBA and/or City Council and the failure to train and/or supervise these individuals can be considered deliberate indifference to the rights of persons with whom these individuals come in contact.  The failed training and/or supervision has caused a pattern of violations and in this instance has harmed Plaintiff 1201 West Girard.

196.    Council President Clarke occupies a sufficiently high policy-making role that his wrongful conduct, as detailed herein, may be deemed a policy and/or custom for the purposes of determining *Monell* liability.

197.    Upon information and belief, other City policies and/or customs, to be identified through discovery, were the moving force behind Plaintiff 1201 West Girard's injuries.

198.    For the purposes of this Count, Council President Clarke was acting pursuant to a municipal custom or policy.

199.    The aforementioned policies and/or customs are unconstitutional themselves and/or the moving force behind Plaintiff 1201 West Girard's injuries.

200.    Plaintiff 1201 West Girard seeks significant damages for Council President Clarke's violation of Plaintiff 1201 West Girard's constitutional right, which was clearly established at the time Council President Clarke engaged in the conduct at issue.

201.   Council President Clarke has acted with a reckless or callous disregard of, or indifference to, the rights of Plaintiff 1201 West Girard, thereby warranting the imposition of punitive damages.

**WHEREFORE**, Plaintiff 1201 West Girard, LLC demand judgment in its favor, and against Council President Darrell L. Clarke and/or the City of Philadelphia, in an amount well in excess of Two Million Dollars ($2,000,000.00), together with pre- and post-judgment interest thereon, attorneys' fees, punitive damages, legally permissible costs of suit, and such other and further relief as this Honorable Court may deem just and proper.

## <u>JURY TRIAL DEMAND</u>

202.   Plaintiffs hereby demand a jury trial of twelve (12) jurors.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

*/s/ Gavin P. Lentz*

Date: October 10, 2023                    By: _____
Gavin P. Lentz, Esquire
Albert M. Belmont, III, Esquire
Matthew L. Minsky, Esquire
1524 Locust Street
Philadelphia, PA  19102
(215) 735-3900
*Attorneys for Plaintiffs*

37