**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **1201 WEST GIRARD AVENUE, LLC,** | : | **CIVIL ACTION** |
| **ORI FEIBUSH** | : | |
| | : | |
| **v.** | : | **NO. 23-3488** |
| | : | |
| **DARRELL L. CLARKE** | : | |

# <u>MEMORANDUM</u>

KEARNEY, J.                                                                December 4, 2023

An experienced developer with zoning permits allowing it to alter a residential neighborhood by replacing a long-standing pharmacy with a multi-family residential complex must recognize it could face political opposition when the neighbors complain to their local elected official. The elected official can oppose the planned change. The issue before us today is whether the developer pleads an elected Philadelphia councilman challenging this type of change in his district is personally benefiting from challenging the change beyond garnering cheers from those who could vote for him. The developer alleges the councilman called the Zoning Board chair and Board members off the record to lodge concerns, filed objections, and pursued policy arguments eventually dismissed by both the zoning board and the state court on appeal. The councilman's steps allegedly caused the developer to pay higher interest rates on its borrowing and lose opportunities. But the developer could not plead after two attempts (nor explain during oral argument) why the councilman's advocacy personally benefitted the councilman beyond satisfying his voters. The developer does not plead facts suggesting corruption. The developer also does not plead an equal protection claim. We dismiss the developer's federal claims. We decline to exercise supplemental jurisdiction over its (and its principal's) state law abuse of process and tort claims. We return those state law claims to the state court.

## I.    Alleged facts.

Property developer 1201 West Girard Avenue, LLC owns property at 1201 West Girard Avenue in Philadelphia.[1] Ori Feibush is a principal in 1201 LLC. A retail pharmacy long occupied 1201 West Girard Avenue serving persons represented by Philadelphia City Council President Darrell Clarke.[2] 1201 LLC announced plans to build residential housing at 1201 West Girard Avenue consisting of 166 dwelling units and spanning 117,960 square feet.[3]

1201 LLC obtained as-of-right permits authorizing demolition and construction of multifamily housing at 1201 West Girard Avenue on January 14, 2021.[4] Those hoping to oppose this development could file challenges to the permits until February 15, 2021.[5]

### Council President Clarke challenges 1201 LLC's zoning permits.

Council President Clarke opposed 1201 LLC's permits before the City's Zoning Board of Adjustment.[6] Council President Clarke based his challenge on the "introductory, preamble section of the Philadelphia Zoning Code."[7] Council President Clarke brought the permits challenge without Philadelphia City Council authorization at the hearing before the zoning board.[8] Council President Clarke conceded his challenge to 1201 LLC's permits "may not necessarily have anything to do with zoning."[9] The City's lawyers contested Council President Clarke's arguments before the Zoning Board.[10] The City's lawyers argued there existed no valid legal argument to challenge the permits' issuance.[11] Council President Clarke argued the City should remap for zoning.[12] The City has not remapped for zoning since 1971 and proposed remapping may have little relationship to whether the City should have issued the as-of-right permits to 1201 LLC.[13]

***Council President Clarke calls the Zoning Board Chair during the hearing.***

Council President Clarke called the Zoning Board Chair during the hearing challenging 1201 LLC's permits because Council President Clarke grew frustrated the Zoning Board would not agree to revoke the permits.[14] Council President Clarke wanted the Zoning Board to uphold his challenge to the permits.[15] 1201 LLC claims Council President Clarke's phone call violated Pennsylvania state law against *ex parte* communications during zoning hearings and the Philadelphia Home Rule Charter's proscription against Council President interference with city official performance.[16]

The Zoning Board initially agreed with Council President Clarke's challenge and revoked 1201 LLC's permits.[17] 1201 LLC timely moved for reconsideration.[18] Council President Clarke continued to pressure the Zoning Board members to avoid forming a quorum to vote on 1201 LLC's reconsideration motion.[19] The Zoning Board eventually obtained a quorum and reinstated 1201 LLC's permits on November 2, 2021.[20]

***The Court of Common Pleas rejects Council President Clarke's appeal.***

Council President Clarke appealed the Zoning Board's denial of his challenge to 1201 LLC's permits.[21] The Court of Common Pleas denied Council President Clarke's appeal on October 24, 2022.[22] The trial judge highlighted the flaw in Council President Clarke's argument of relying on the "aspirational policy considerations" instead of the "actual language of the various zoning provisions."[23]

The litigation delay led to 1201 LLC needing to pay a higher interest rate and requiring its principal Mr. Feibush to personally guarantee debt.[24] They also incurred substantial attorney fees and costs.[25]

*1201 LLC and Mr. Feibush sue Council President Clarke.*

1201 LLC and Mr. Feibush flush with victory turned around and sued Council President Clarke in state court for interfering with 1201 LLC's development of 1201 West Girard Avenue by challenging the issued permits.[26] Council President Clarke removed to our Court based on 1201 LLC's claims he violated the substantive due process clause, equal protection clause, and is otherwise liable under a municipal liability theory for violating its civil rights even though he is an individual. 1201 LLC argues Council President Clarke corrupted the zoning process by advancing baseless arguments to invalidate its permits.[27] 1201 LLC argues Council President Clarke violated its substantive due process rights by challenging its permits, attempting to illegally influence the Zoning Board vote on the permits, and preventing the Zoning Board from achieving quorum to hear its motion for reconsideration.[28] 1201 LLC argues Council President Clarke challenged its permits for his own political and personal gain of being more popular with the people who voted for him.[29]

1201 LLC also claims Council President Clarke violated its rights to equal protection by challenging the permits.[30] 1201 LLC argues Council President Clarke intentionally treated it differently than other similarly situated development companies with similar development permits by seeking to invalidate the permits.[31] 1201 LLC argues Council President Clarke lacked a rational basis for seeking to invalidate its issued permits.[32]

1201 LLC sued Council President Clarke in his individual and official capacity. It also sued him under a theory of municipal liability even though it is suing him in a direct capacity. 1201 LLC alleges Council President Clarke violated its constitutional rights because of the City's policy or custom of deference to councilmember decisions and the City's failure to train or supervise members of the Zoning Board and City Council.[33] 1201 LLC alleges the City

maintains a custom of failing to train members of the Zoning Board and City Council and this failure to train caused 1201 LLC harm because the untrained Zoning Board members approved Council President Clarke's challenge to the permits before reconsidering and rejecting his challenges.[34]

1201 LLC also alleges state law claims of abuse of process, wrongful use of civil proceedings, and tortious interference with its contract rights.[35] Mr. Feibush also claims Council President Clarke tortiously interfered with his contract rights.[36]

## II.    Analysis

Council President Clarke moves to dismiss on several grounds.[37] We need not address his challenges to the state law claims as we decline to exercise supplemental jurisdiction over those claims upon finding 1201 LLC cannot plead federal claims.[38]

Council President Clarke argues he did not violate 1201 LLC's substantive due process rights because the Philadelphia Code authorizes challenges to permit decisions before the Zoning Board and challenges to Zoning Board decisions before the Court of Common Pleas.[39] Adherence to a legally authorized process does not shock the conscience necessary to state a substantive due process claim.[40] Council President Clarke also argues he did not violate 1201 LLC's equal protection rights because 1201 LLC fails to plead it is a member of a protected class.[41] Council President Clarke argues 1201 LLC cannot allege municipal liability against him because municipal liability does not attach to individuals sued in their individual capacity.[42] Council President Clarke argues 1201 LLC cannot allege municipal liability against him in his official capacity because he is not a policymaker for purposes of imposing municipal liability.[43]

1201 LLC does not plead facts allowing us to plausibly infer a basis for substantive due process, equal protection, or municipal liability claims. We dismiss 1201 LLC's federal claims. We remand 1201 LLC's and Mr. Feibush's state law claims.

### A. 1201 LLC fails to plead a substantive due process claim.

1201 LLC alleges Council President Clarke violated its substantive due process rights by challenging its permits in the Zoning Board and appealing an adverse decision to the Pennsylvania trial court.[44] 1201 LLC argues it has a property interest in the permits.[45] 1201 LLC argues Council President Clarke interfered with its property interest by advancing baseless arguments to challenge the permits' issuances.[46] 1201 LLC alleges Council President Clarke corrupted the zoning process.[47] 1201 LLC alleges Council President Clarke's legal challenge to its permits, his attempts to influence the Zoning Board vote on the permits, and his attempts to prevent the Zoning Board from achieving quorum to hear its motion for reconsideration shocks the conscience necessary to state a substantive due process claim.[48] 1201 LLC broadly alleges Council President Clarke challenged the permits for his own political and personal gain.[49] But 1201 LLC could not identify a personal gain during oral argument and instead argued Council President Clarke's interference benefitted him by making him more popular with those voting for him.

Council President Clarke counters he engaged in a lawfully authorized method to challenge 1201 LLC's permits.[50] Council President Clarke argues adhering to lawfully authorized process does not shock the conscience necessary to state a substantive due process claim.[51]

We grant Council President Clarke's motion to dismiss 1201 LLC's substantive due process claim. 1201 LLC does not plead facts Council President Clarke's challenges to its permits shock the conscience.

Our Court of Appeals requires developers asserting substantive due process claims to allege a recognized constitutional right and the government's deprivation of the right "shocks the conscience."[52] Whether the complained-of behavior shocks the conscience sufficient to state a substantive due process claim depends on the factual circumstances.[53] Our Court of Appeals considers allegations of corruption or self-dealing sufficient to meet the shock the conscience standard.[54] Violating state law in bad faith, with an improper motive, or "based on considerations outside the actor's jurisdiction" generally does not shock the conscience sufficient to state a substantive due process claim.[55]

We are persuaded by Judge Mannion's analysis dismissing a substantive due process claim where the developer pleaded collusion among Borough officials to interfere with the developer's use of the land.[56] The developer in *Stemler* previously sued the borough, a borough councilmember, and the borough mayor for arbitrarily enforcing borough building codes and zoning ordinances "to harass and damage him and his business interests."[57] The borough, officials, and the developer settled the lawsuit.[58] Several years after the settlement, the same borough councilmember, borough mayor, and the borough zoning officer met and set a plan seeking retribution against the developer to cause harm and damage to the developer and his business interests.[59] The borough issued nine separate notices, orders, or demands to the developer regarding violations after the borough councilmember, mayor, and zoning officer met to create their alleged scheme of harassment.[60] The developer alleged the unlawful notices, orders, or demands contained misrepresentations of fact sent to cause the developer financial

harm.[61] The developer argued the borough enforced ordinances against him but failed to enforce the ordinance against the "glaring violations relating to [the borough mayor's] property."[62] Judge Mannion granted the borough officials' motion to dismiss holding the developer failed to plead facts the borough officials "were motivated by self-interest and animosity" supporting an inference of "corruption or self-dealing" to state a substantive due process claim.[63] Judge Mannion held the borough officials' alleged violation of state law through inconsistent enforcement of its zoning ordinances could not make a substantive due process claim.[64]

We are also persuaded by Judge Dodge's analysis in dismissing a developer's substantive due process claim where the developer pleaded borough officials' failure to vote on a permit caused a work stoppage and forced the developer to pay to relocate a public sewer line.[65] The developer in *Tomko* used the property for grading and filling for thirty years and received annual grading permits from the borough.[66] The developer submitted the required permit application in January 2019.[67] The borough failed to respond for several months and then allegedly began a campaign in July 2019 "to falsely attribute illegal conduct to Tomko in order to force him to pay for the relocation and upgrade of the [b]orough's outdated sewer system."[68] Borough officials issued "stop work order[s]" on the property and ordered a hearing on the permit for September 2019.[69] At the hearing, borough officials stated they could not adopt the permit without the developer providing a proposal to relocate an existing public sewer line traversing the property.[70] The officials did not rule on the permit during the September 2019 hearing.[71] Borough officials threatened to arrest the manager of the work site and others trying to complete work on the site.[72] The developer submitted a revised permit application in March 2020 and the borough again sought to compel the developer to privately fund the relocation of a public sewer line.[73]

The developer sued alleging the borough and its officials violated the developer's substantive due process rights by delaying work on the project and "coerc[ing]" the developer to pay for the relocation of the public sewer line constituting unlawful self-dealing.[74] Judge Dodge granted a motion to dismiss the substantive due process claim holding elected officials engaging in land-use decisions with an improper motive did not shock the conscience sufficient to state a substantive due process claim.[75] Judge Dodge also held the developer failed to allege the officials engaged in self-dealing despite repeated requests the developer pay for the public sewer line because the developer did not allege facts suggesting the officials would benefit personally from the relocated public sewer line.[76]

We are also guided by the contrasts offered in Chief Judge Sánchez's review of sufficiently pleaded facts for a substantive due process claim in *Grace Land II, LLC v. Bristol Township*.[77] Two associated entities purchased land zoned for residential use from a bank to operate an outpatient substance abuse and alcohol rehabilitation treatment facility.[78] The bank applied to have the land rezoned for commercial use when it owned the land.[79] The township council president did not oppose rezoning the land so long as the bank did not sell the property to a drug and alcohol treatment provider.[80] The township manager called the lawyer for the associated entities after the associated entities purchased the land from the bank and warned the lawyer the township did not want a drug treatment facility operating on the land.[81] The township council president suggested the associated entities purchase vacant school properties within the district but the township outbid the associated entities for the vacant school properties.[82] The township denied the associated entities "Detox Application" explaining again the township did not want a drug treatment facility operating on the land and explaining the township would not have rezoned the land from residential to commercial had the township known the bank would

sell the property to a drug treatment facility.[83] The associated entities again filed for a permits supporting their use of the land for drug treatment and the township again denied the application despite the associated entities explaining they could not operate any facility on the land without the requisite permits.[84] The associated entities appealed the township's denials and the state court reversed the denials.[85]

The associated entities sued the township arguing the repeated land use application denials demonstrated "bias against recovering alcohol and drug addicts" and violated the entities' substantive due process rights.[86] Chief Judge Sánchez noted the township's repeated denials could be construed as serving the public interest against having a drug treatment facility.[87] But Chief Judge Sánchez allowed the substantive due process claim to proceed, finding pleaded facts demonstrated "bias and discriminatory animus" sufficient to shock the conscience and plead a substantive due process claim: the township repeatedly explained to the associated entities it did not want a drug treatment facility on the property, the township attempted to persuade the associated entities to purchase a different tract of land to develop the drug treatment facility but the township ultimately purchased the suggested land and blocked the development, and the township explained to the associated entities it would not have rezoned the land commercial if the township knew the bank would sell it to a drug treatment facility operator.[88]

1201 LLC does not plead facts allowing us to plausibly infer Council President Clarke's actions are anything like the actions Chief Judge Sánchez reviewed in *Grace Land II*. The associated entities in *Grace Land II* plead the township manager told the associated entities the township did not want them operating a drug treatment facility in one location, the township council president induced the associated entities to try to purchase land elsewhere but outbid the entities for the suggested land, and the township explained to the associated entities it would not

have rezoned the land the associated entities purchased from residential to commercial had the township known the previous owner would sell the land to a drug treatment facility.[89] 1201 LLC can only plead (after two attempts) Council President Clarke challenged its permits for "political and personal gain."[90] 1201 LLC does not plead why Council President Clarke opposed its permits other than claiming during oral argument they would find out in discovery but we should somehow presume his conduct may make him more popular with those voting for him..[91] 1201 LLC does not plead Council President Clarke's bias against 1201 LLC or its proposed development.

1201 LLC's allegations Council President Clarke violated state law by attempting to influence the zoning board to accede to his permits challenge do not state a substantive due process claim. 1201 LLC pleads Council President Clarke illegally interfered with the Zoning Board's deliberations by calling the Zoning Board Chair during the hearing.[92] Judge Mannion similarly considered an allegedly unlawful plan among a borough councilmember, borough mayor, and borough zoning officer to issue unlawful notices and orders of violation on a developer in *Stemler*.[93] Judge Mannion dismissed the substantive due process claim reminding the developer state law violations do not alone state a substantive due process claim.[94] 1201 LLC cannot state a substantive due process claim by concluding Council President Clarke's allegedly unlawful call interfered with the Zoning Board's decision on 1201 LLC's permits which the Zoning Board eventually approved.

1201 LLC, like the developer in *Tomko*, does not plead facts Council President Clarke stood to benefit financially from challenging its permits.[95] We pressed this issue during oral argument. 1201 LLC's counsel conceded he could not plead such facts. The developer in *Tomko* sued arguing the borough's failure to rule on its permit application and the borough's requests

11

for plans to relocate the sewer line constitute "self-dealing."[96] Judge Dodge dismissed the substantive due process claim because the developer did not allege how relocating the sewer line personally benefitted the borough officials.[97] 1201 LLC pleads Council President Clarke received some nebulous personal gain from challenging 1201 LLC's permits.[98] 1201 LLC does not plead how Council President Clarke's challenge to its permits benefitted him financially.[99] We are left to speculate how Council President Clarke received personal financial benefit from challenging 1201 LLC's permits. And we cannot speculate. We need a fact basis. 1201 LLC pleads less information than Judge Dodge considered insufficient to allege a substantive due process claim.

Substantive due process claims deal more in the elected official's motives for acting than in the elected official's actions themselves.[100] 1201 LLC pleads several ways in which Council President Clarke challenged its permits. But 1201 LLC does not plead facts (after two attempts) allowing us to plausibly infer some unconstitutional bias for why Council President Clarke challenged its permits. We grant Council President Clarke's Motion to dismiss 1201 LLC's substantive due process claim.

### B. 1201 LLC fails to plead an equal protection claim.

1201 LLC pleads Council President Clarke violated its equal protection rights when challenging its permits.[101] 1201 LLC argues Council President Clarke intentionally treated it differently than other similarly situated development companies with similar development permits in Council President Clarke's district by challenging 1201 LLC's permits.[102] 1201 LLC argues Council President Clarke lacked a rational basis for seeking to invalidate its issued permits.[103]    Council President Clarke counters his challenge to 1201 LLC's permits did not violate the development company's equal protection rights because 1201 LLC fails to plead it is

a member of a protected class.[104] We grant Council President Clarke's motion to dismiss 1201 LLC's equal protection claim because 1201 LLC fails to plead a relevant comparator.

Our Court of Appeals permits landowners to bring two types of equal protection claims against elected officials.[105] A landowner can plead an equal protection claim by alleging "he received different treatment than other similarly situated persons and that the disparate treatment was based on his protected class status."[106] A landowner can also plead a "class of one" equal protection claim by alleging "(1) the [elected official] treated him differently from others similarly situated, (2) the [elected official] did so intentionally, and (3) there was no rational basis for the difference in treatment."[107] In either case the landowner must plead facts about similarly situated landowners and plead facts the similarly situated landowners are alike "in all relevant aspects."[108] Our Court of Appeals explains it is "difficult" for a landowner to state an equal protection claim against an elected official.[109] Our Court of Appeals instructs it is "very unlikely that a claim that fails the substantive due process test will survive under an equal protection approach."[110]

1201 LLC does not plead it is a member of a protected class.[111] We review 1201 LLC's equal protection claim as a "class of one" claim.

Our Court of Appeals dismissed a landowner's equal protection claim for failing to plead facts about a similarly situated business receiving better treatment than the landowner.[112] The landowner in *Joey's Auto Repair & Body Shop* sued Fayette County and its Commissioner challenging zoning violations the County charged the landowner.[113] The landowner pleaded the county and its commissioner treated a similarly situated garden center, which abutted their property, more favorably.[114] The landowner pleaded the county did not issue the same citations or complaints to the garden center.[115] Our Court of Appeals affirmed Chief Judge Conti's

dismissal holding even though the landowner identified a similarly situated business the landowner failed to plead facts demonstrating how the garden center "[was] a similarly situated entity."[116]

We are also guided by Chief Judge Bumb dismissing a developer's equal protection claim against Sea Isle City where the developer plead unfavorable treatment as compared to "similarly situated residential properties."[117] The developer in *8600 Landis, LLC* sued Sea Isle City and several city officials challenging a zoning officer's "issuance of a Stop Work Order" which delayed development and caused the developer to incur additional construction costs.[118] The developer argued it pleaded "sufficiently identified similarly situated comparators" by alleging the city failed to issue violations "to any other similarly situated properties aside from [the developer] for allegedly violating the approved residential occupancy of R–2 or approved zoning use by renting out the property with a rental permits."[119] Chief Judge Bumb dismissed the developer's class of one equal protection claim and considered its pleading of comparators as "conclusory and overbroad."[120] The developer's conclusory allegation of unfavorable treatment compared to "similarly situated residential properties" did not allow Chief Judge Bumb to determine the identity of these properties or whether these properties could be proper comparators.[121]

1201 LLC offers no comparator. And it could not do so during oral argument which may have allowed some leeway towards amendment. 1201 LLC does not plead which development companies Council President Clarke treated differently. 1201 LLC pleads Council President Clarke did not challenge similar development permits issued to similarly situated development companies in Council President Clarke's district.[122] The developer in *8600 Landis, LLC* alleged the city treated it differently than "similarly situated residential properties" holding R-2

permits.[123] 1201 LLC pleads conclusory facts about comparators like those considered and dismissed by Chief Judge Bumb. 1201 LLC's failure to plead the name of comparators receiving better treatment from Council President Clarke falls short of the standard recognized by our Court of Appeals in *Joey's Auto Repair & Body Shop* requiring specific reasons describing the similarities between the comparator and 1201 LLC.

We dismiss 1201 LLC's class of one equal protection claim with prejudice.

### C. 1201 LLC cannot plead a *Monell* claim against Council President Clarke.

1201 LLC alleges Council President Clarke is personally liable on a municipal liability theory arguing the City maintains a policy or custom of deference to councilmember decisions and the City fails to train or supervise the Zoning Board and City Council.[124] 1201 LLC asks we hold Council President Clarke liable for the City's policy of councilmanic prerogative.[125] 1201 LLC argues the City's policy of councilmanic prerogative violated 1201 LLC's constitutional rights because the policy allowed Council President Clarke to submit a "frivolous and illegitimate" challenge to 1201 LLC's permits.[126] 1201 LLC asks we hold Council President Clarke liable for the City's failure to train Zoning Board members and City councilpersons which allowed Council President Clarke to violate 1201 LLC's constitutional rights.[127] But 1201 LLC sues only Council President Clarke and not the City of Philadelphia.[128]

Council President Clarke counters 1201 LLC cannot plead municipal liability against him in his individual capacity because it only attaches to actions taken in one's official capacity.[129] Council President Clarke counters 1201 LLC cannot plead municipal liability against him in his official capacity because he is not a policymaker.[130] Council President Clarke argues we cannot consider him a policymaker because the Zoning Board and the Court of Common Pleas had final review over Council President Clarke's challenges.[131]

We dismiss 1201 LLC's municipal liability *Monell* claim against Council President Clarke because 1201 LLC does not sue a municipal body.

The Supreme Court allows landowners to sue municipal entities under section 1983 for constitutional violations committed by the entities' employees.[132] A landowner can sue a municipal entity arguing the entity's "policy or custom" carried out by the entity's employee caused the landowner's constitutional harm.[133] A landowner can sue a municipal entity for the actions of governmental employees who possess "final, unreviewable discretion" to create and implement the injurious "policies" causing the landowner's constitutional harm.[134]

But 1201 LLC does not sue a municipal entity.[135] *Monell* municipal liability does not attach to Council President Clarke because he is an individual and not a municipal entity. We dismiss 1201 LLC's *Monell* claims against Council President Clarke.

### D.  We decline to exercise jurisdiction over 1201 LLC's state law claims.

1201 LLC alleges state law wrongful use of civil proceedings, abuse of process, and intentional tortious interference with prospective and existing contractual relations.[136] We exercise the discretion Congress gives us and the Supreme Court reaffirms to dismiss 1201 LLC's state law claims without prejudice.

Congress requires we exercise supplemental jurisdiction over federal and state law claims where the state law claims "form part of the same case or controversy under Article III."[137] Congress empowers us to decline exercising supplemental jurisdiction over state law claims if we dismissed "all claims over which [we] ha[ve] original jurisdiction."[138] The Supreme Court characterized this power as "purely discretionary."[139]

We decline to exercise supplemental jurisdiction over 1201 LLC's remaining state law claims. We dismiss 1201 LLC's state law claims without prejudice.

### E. We remand Mr. Feibush's tort claim.

Mr. Feibush alleges a state law tort claim against Council President Clarke.[140] 1201 LLC and Mr. Feibush sued in the state court.[141] Council President Clarke removed invoking our federal question jurisdiction.[142] But Mr. Feibush does not plead our subject matter jurisdiction and brings his own claim separate from 1201 LLC.

We decline to exercise supplemental jurisdiction over Mr. Feibush's state law claim.

## III. Conclusion

Developer 1201 LLC cannot plead a federal claim after two attempts. Its principal Mr. Feibush does not try. 1201 LLC does not like the arguments raised by Council President Clarke. It persuaded the Zoning Board and a state court to reject those arguments. And it now wants compensation for money allegedly lost in defeating Council President Clarke's advocacy. But it pleads no basis for us to plausibly infer Council President Clarke acted for his own personal gain other than advocating for citizens and becoming more popular. Broadly alleging corruption and personal gain without a single fact does not suffice in a court of law. There is no basis to plausibly infer Council President Clarke violated 1201 LLC's substantive due process or equal protection rights. 1201 LLC cannot sue Counsel President Clarke as a municipal entity. We decline to exercise supplemental jurisdiction over 1201 LLC's and its principal's state law challenges to litigation strategies before a zoning board and state trial court.

---

[1] ECF No. 12 ¶ 21. 1201 LLC attempts to avoid the undisputed fact it (and not Mr. Feibush) owns and seeks to develop the property. We will accurately describe the owner as the entity 1201 LLC.

[2] *Id.* ¶ 22.

[3] *Id.* ¶¶ 22-23.

[4] *Id.* ¶¶ 26-27.

[5] *Id.* ¶ 29.

[6] *Id.* ¶ 31.

[7] *Id.* ¶ 32.

[8] *Id.* ¶ 38.

[9] *Id.* ¶ 41.

[10] *Id.* ¶ 43.

[11] *Id.* ¶ 45. ("What we're talking about here is a disagreement about whether this project should be by-right in this zoning classification or in this particular neighborhood or whether this property should have been re-mapped, but both of those things are arguments about legislation that are for City Council to address.").

[12] *Id.* ¶ 49.

[13] *Id.*

[14] *Id.* ¶¶ 52, 53.

[15] *Id.*

[16] *Id.* ¶ 54.

[17] *Id.* ¶ 55.

[18] *Id.* ¶ 63.

[19] *Id.* ¶ 64.

[20] *Id.* ¶ 65.

[21] *Id.* ¶ 66. 1201 LLC alleges Council President Clarke knew his appeal was frivolous.

[22] *Id.* ¶ 67.

[23] *Id.* ¶ 68.

[24] *Id.* ¶ 75.

[25] *Id.* ¶ 76.

[26] *Id.* ¶¶ 1-2.

[27] *Id.* ¶ 164.

[28] *Id.* ¶¶ 52, 163-171.

[29] *Id.* ¶ 166. 1201 LLC's counsel confirmed this purpose during oral argument.

[30] *Id.* ¶¶ 174-183.

[31] *Id.* ¶¶ 176-180.

[32] *Id.* ¶ 176.

[33] *Id.* ¶¶ 184-201.

[34] *Id.* ¶ 195.

[35] 1201 LLC alleges Council President Clarke engaged in the wrongful use of civil proceedings by challenging the permits "in a grossly negligent manner and/or without probable cause and primarily for an [improper] purpose." *Id.* ¶ 79. 1201 LLC alleges Council President Clarke knew there existed no legal basis for his permits challenge and therefore acted with gross negligence and without probable cause by challenging the permits, challenging 1201 LLC's motion for reconsideration, and appealing the Zoning Board's reinstatement of the permits. *Id.* ¶¶ 83-88. 1201 LLC argues Council President Clarke engaged in ex parte communications with Zoning Board members because he knew his challenge lacked merit. *Id.* ¶ 91. 1201 LLC alleges these ex parte communications consisting of "threats, intimidation, and influence" demonstrate Council President Clarke advanced his challenge with an improper purpose. *Id.*

1201 LLC alleges Council President Clarke abused process. *Id.* ¶¶ 97-119. 1201 LLC alleges Council President Clarke committed abuse of process by "institut[ing] and prosecut[ing] a meritless legal challenge" to invalidate its as-of-right permit. *Id.* ¶ 101. 1201 LLC alleges Council President Clarke used the zoning board, a forum for addressing legitimate zoning concerns, for his own political and personal reasons and to frustrate property rights and impede the lawful use of one's land. *Id.* ¶¶ 102-04. 1201 LLC alleges Council President Clarke challenged its permit to financially hurt 1201 LLC and impeded and delayed development of the property. *Id.* ¶ 108. 1201 LLC alleges Council President Clarke's ex parte communications with members of the zoning board demonstrate actual malice. *Id.* ¶ 114.

1201 LLC alleges Council President Clarke engaged in intentional tortious interference with prospective and existing contractual relations. *Id.* ¶¶ 143-154. 1201 LLC alleges Council President Clarke knew the development company had several prospective and existing contractual relations while challenging the as-of-permit. *Id.* ¶¶ 145-46. 1201 LLC alleges Council President Clarke knew these prospective and existing contractual relations "depende[d]"

on the permit's validity. *Id.* ¶ 147. 1201 LLC alleges Council President Clarke lacked a privilege or justification for interfering with its prospective or existing contractual relations. *Id.* ¶ 149. 1201 LLC alleges its existing contractual relations included obligations between the development company and its preferred lender, contractors who would develop the property, financial investors in the project, a subordinate lender, an acquisition loan, and "other contractual relations." *Id.* ¶ 151. 1201 LLC alleges its prospective contractual relations included a preferred lender under certain terms, contractors, and "other prospective contractual relations dependent on its by-right permits." *Id.* ¶ 152.

[36] *Id.* ¶¶ 120-142.

[37] A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[38] We leave the state law claims for the state court upon remand. We also do not need to address Council President Clarke's argument qualified immunity shields him from 1201 LLC's substantive due process, equal protection, and municipal liability claims asserted against him in his official capacity.

[39] *Id.* at 23-25.

[40] *Id.* at 24-25.

[41] *Id.* at 25.

[42] *Id.* at 26.

[43] *Id.*

[44] ECF No. 12 ¶¶ 155-173.

[45] *Id.* ¶ 159.

[46] *Id.* ¶ 164.

[47] *Id.*

[48] *Id.* ¶¶ 163-171.

[49] *Id.* ¶ 166.

[50] ECF No. 14 at 23-25.

[51] *Id.* at 24-25.

[52] *Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd. Of Educ.*, 587 F.3d 176, 190 (3d Cir. 2009).

[53] *Hazzouri v. W. Pittston Borough*, 416 F. Supp. 3d 405, 416 (M.D. Pa. 2019).

[54] *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004).

[55] *E. Rockhill Twp. v. Richard E. Pierson Materials Corp.*, 386 F. Supp. 3d 493, 499 (E.D. Pa. 2019).

[56] *Stemler v. Borough of Parryville*, No. 18-1763, 2020 WL 1849762 (M.D. Pa. Apr. 13, 2020).

[57] *Id.* at *1.

[58] *Id.*

[59] *Id.*

[60] *Id.* at *2.

[61] *Id.*

[62] *Id.*

[63] *Id.* at *5.

[64] *Id.*

[65] *Tomko v. Baldwin Borough*, No. 20-822, 2021 WL 3610038 (W.D. Pa. June 30, 2021), *report and recommendation adopted sub nom. Tomko v. Baldwin Borough*, No. 20-822, 2021 WL 3603431 (W.D. Pa. Aug. 13, 2021), *aff'd sub nom. Tomko v. Baldwin Borough*, No. 21-2593, 2022 WL 1772988 (3d Cir. June 1, 2022).

[66] *Id.* at *2.

[67] *Id.*

[68] *Id.*

[69] *Id.* at *3.

[70] *Id.*

[71] *See id.*

[72] *Id.*

[73] *Id.* at *3-4.

[74] *Id.* at *4.

[75] *Id.* at *6.

[76] *Id.* at *8.

[77] No. 18-5413, 2019 WL 4752026 (E.D. Pa. Sept. 30, 2019).

[78] *Id.* at *1.

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.* at *2.

[83] *Id.*

[84] *Id.*

[85] *Id.* at *4.

[86] *Id.* at *6.

[87] *Id.*

[88] *Id.*

[89] *Id.* at *1-2.

[90] ECF No. 12 ¶ 166.

[91] *See id.*

[92] *Id.* ¶ 52.

[93] *Stemler*, 2020 WL 1849762, at *1, 5.

[94] *Id.* at *5.

[95] *See* ECF No. 12.

[96] *Tomko*, 2021 WL 3610038 at *4.

[97] *Id.* at *8.

[98] ECF No. 12 ¶ 166.

[99] *See* ECF No. 12.

[100] *See Eichenlaub*, 385 F.3d at 286.

[101] ECF No. 12 ¶¶ 174-183.

[102] *Id.* ¶¶ 176-180.

[103] *Id.* ¶ 176.

[104] ECF No. 14 at 25.

[105] *Vurimindi v. City of Philadelphia*, 521 F. App'x 62, 66 (3d Cir. 2013); *Joey's Auto Repair & Body Shop v. Fayette Cnty.*, 785 F. App'x 46, 49 (3d Cir. 2019).

[106] *Vurimindi*, 521 F. App'x at 66.

[107] *Joey's Auto Repair & Body Shop*, 785 F. App'x at 49.

[108] *Id.*

[109] *Id.* (quoting *Eichenlaub*, 385 F.3d at 287).

[110] *Eichenlaub*, 385 F.3d at 287.

[111] ECF No. 12 ¶¶ 174-183.

[112] *Joey's Auto Repair & Body Shop*, 785 F. App'x at 49.

[113] *Id.* at 48.

[114] *Id.* at 49.

[115] *Id.*

[116] *Id.*

[117] *8600 Landis, LLC v. City of Sea Isle City*, No. 17-2234, 2018 WL 1509088, at *5 (D.N.J. Mar. 27, 2018).

[118] *Id.* at *2.

[119] *Id.* at *5.

[120] *Id.*

[121] *Id.*

[122] ECF No. 12 ¶¶ 176-180.

[123] *8600 Landis, LLC*, 2018 WL 1509088 at *5.

[124] ECF No. 12 ¶¶ 184-201.

[125] *Id.* ¶ 189.

[126] *Id.* ¶¶ 189-193.

[127] *Id.* ¶ 195.

[128] *Id.* ¶¶ 184-201.

[129] ECF No. 14 at 26.

[130] *Id.*

[131] *Id.* at 27.

[132] *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978).

[133] *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003).

[134] *Kelly v. Borough of Carlisle*, 622 F.3d 248, 264-65 (3d Cir. 2010).

[135] *See* ECF No. 12 (naming Council President Clarke as the sole defendant).

[136] ECF No. 12 ¶¶ 78-96, 97-119, 143-154.

[137] 28 U.S.C. § 1367(a).

[138] 28 U.S.C. § 1367(c)(3).

[139] *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).

[140] ECF No. 12 ¶¶ 120-142.

[141] *See* ECF No. 1.

[142] *See id.*